GARRY L. MONTANARI, State Bar No. 89790
CHRISTOPHER W. SCHMIDT, State Bar No. 287590
MICHAELIS, MONTANARI & JOHNSON, P.C.
4333 Park Terrace Dr. #110
Westlake Village, CA 91361
Telephone No.:    (818) 865-0444

Attorneys for Defendants,
WALTER WOLTOSZ and SIMULATIONS
PLUS, INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRI WINSLOW,<br><br>                    Plaintiff,<br><br>          vs.<br><br>INCREDIBLE ADVENTURES,<br>INC.; WALTER WOLTOSZ, an<br>individual; SIMULATIONS PLUS,<br>INC.; MACH 1 AVIATION, INC.;<br>ESTATE OF DOUG GILLIS,<br>DECEASED; AVIATION<br>CLASSICS, LTD.; and DOES 1<br>through 100, inclusive,<br><br>                    Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. SECTION 1331 (FEDERAL QUESTION)** |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE

CENTRAL DISTRICT OF CALIFORNIA:

Walter Woltosz (hereinafter "WOLTOSZ") and Simulations Plus, Inc.

(hereinafter "SPI"), by and through their attorneys of record, Michaelis, Montanari

& Johnson, P.C., hereby remove this pending action from the Superior Court of the

State of California for the County of Los Angeles to the United States District Court

for the Central District of California on the following grounds:

/ / /

## I.   **PROCEDURAL HISTORY**

1.     This is a wrongful death and survivor action that arises from an aircraft accident, which occurred on May 18, 2012 near the Boulder City Municipal Airport, Boulder City, Nevada, resulting in the death of Richard Winslow.

2.     This action was commenced on May 14, 2014, by the filing of a complaint in the Superior Court of the State of California for the County of Los Angeles, Case No. BC545789 (hereinafter "the state action").  On May 16, 2014, plaintiff filed an Amendment to Complaint, identifying a fictitious defendant (hereinafter "the amendment").  A true and correct copy of the original complaint, the amendment, as well as all other documents filed in the state action, are attached hereto as Exhibit "A."

3.     Six defendants were named in the Complaint: INCREDIBLE ADVENTURES, INC.; WOLTOSZ; SPI; MACH 1 AVIATION, INC.; THE ESTATE OF DOUG GILLIS, Deceased; and AVIATION CLASSICS, LTD.  The Complaint also lists fictitious defendants Does 1-100.  The amendment identified Doe 1 as the ESTATE OF DAVID GLEN RIGGS.  Fictitious defendants Does 2-100 remain.  As of the date of the filing of this removal petition, moving defendants are not aware of service on the other named defendants.

4.     Counsel for WOLTOSZ and SPI first obtained a copy of the Complaint on June 28, 2014.  Accordingly, this Notice of Removal is timely filed, pursuant to 28 U.S.C. section 1446(b), within thirty days of first receipt by WOLTOSZ and SPI of the Complaint filed in the state action.

5.     A copy of this Notice of Removal is being filed with the Clerk of the Court for the Superior Court of the State of California for the County of Los Angeles, and is being served upon plaintiff and all parties of record, pursuant to 28 U.S.C. section 1446(d).

6.     This is the proper district for removal, pursuant to 28 U.S.C. sections 118(a) and 1441(a), in that the Central District of California includes the County of

NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. SECTION 1331 (FEDERAL QUESTION)

1  Los Angeles, and is "the district and division embracing the place where such action

2  is pending."

3      7.      Subject matter jurisdiction is invoked pursuant to 28 U.S.C. section 1331

4  (federal question).

5              **II.    ALLEGATIONS OF THE COMPLAINT**

6      8.      The complaint alleges that on May 18, 2012, Mr. Richard Winslow was

7  riding as a passenger in a L-39 jet when it crashed upon take off in Boulder City,

8  Nevada.  Both he and the pilot of the aircraft, Mr. David Gillis were killed. (Exhibit

9  A, Complaint, ¶1.)

10     9.      The complaint alleges that WOLTOSZ and SPI were the owners of the

11  L-39. (Complaint, ¶¶7 and 8.)

12     10.     The complaint alleges that pilot Gillis and pilot David Riggs, flying

13  another L-39 flying for purposes of the "Top Gun dog fighting experience," had prior

14  piloting licensing violations with the FAA.  (Complaint, ¶¶20 and 21.)

15     11.     The first and second causes of action for negligence and negligence

16  (common carrier), alleged that the defendants were negligent in at least the following

17  respects:

18     (a)     Failing to provide proper pre-flight safety training;

19     (b)     Failing to provide proper disclosures of experience or flying history;

20     (c)     Failing to be properly licensed to fly for compensation for hire;

21     (d)     Failing to properly and prudently navigate and pilot the aircraft;

22     (e)     Failing to use reasonable care and due care required by pilots in the same

23  or similar circumstances; and

24     (f)     Operating an illegal ride for hire in violation of FAA rules and

25  regulations.

26  Plaintiffs also allege that defendants are negligent per se for violating Federal

27  Aviation Regulation 14 CFR 91.319 (Complaint, ¶¶ 26-28).

28     12.     As respects WOLTOSZ and SPI, the fourth cause of action alleges

negligent ownership in that these defendants negligently entrusted the aircraft to pilots that were unqualified and unfit for the operation of the aircraft based among others, upon prior citations by the FAA for violation of FAA rules and regulations (Complaint, ¶51).

13.    The fifth cause of action alleges negligent maintenance as a result of the defendants failing to ensure that the subject aircraft was adequately and properly maintained, serviced and repaired as proscribed by both common law and the FAA Regulations (Complaint, ¶57).

14.    The sixth and seventh causes of action allege negligence and strict products liability under theory of products liability.

15.    The eight cause of action alleges fraud and deceit based upon an alleged misrepresentation that these jet flights were safe and the pilots were qualified and legally able to be performing these specific flights (Complaint, ¶78).

### III.    FEDERAL QUESTION JURISDICTION

16.    Removal of this action is proper because 28 U.S.C. section 1441(a) authorizes the removal of "any civil action brought in State court of which the district courts of the United States have original jurisdiction." This Court has original jurisdiction over Plaintiff's action because it "aris[es] under the Constitution, laws, or treaties of the United States." (28 U.S.C. § 1331.)

17.    Federal jurisdiction is appropriate where, as is the case here, there clearly is "a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 318 (2005).

18.    The authority set forth below, including the Ninth Circuit's decisions in *Gilstrap v. United Air Lines, Inc.,* 709 F.3d 995 (9th Cir. 2013)*, Martin v. Midwest Express Holding, Inc.*, 555 F.3d 806 (9th Cir. 2009) and *Montalvo v. Spirit Airlines*, 508 F.3d 464 (9th Cir. 2007), which are binding precedent, and the Third Circuit's

1   decision in *Abdullah v. American Airline, Inc.* 181 F.3d 363 (3d Cir. 1999), adopted

2   by the Ninth Circuit, clearly demonstrates that federal jurisdiction is appropriate due

3   to the presence of a federal issue.

4       19.    The Ninth Circuit has adopted *Abdullah's* holding "that federal law

5   generally establishes the applicable standards of care in the field of aviation safety."

6   *Gilstrap v. United Air Lines, Inc., supra,* 709 F.3d at 1005.

7       20.    The United States Congress enacted the 1958 Federal Aviation Act, 49

8   U.S.C. sections 40101-49105. In *Abdullah*, the Third Circuit held that, by doing so,

9   ". . . Congress intended to rest sole responsibility for supervising the aviation industry

10  with the federal government". 181 F.3d at 367.

11      21.    In *Montalvo*, the Ninth Circuit emphasized the comprehensive

12  regulations promulgated by the Administrator of the Federal Aviation Administration

13  (hereinafter "FAA") in the field of aviation safety.  The court recognized that

14  "'[a]viation is unique among transportation industries in its relation to the federal

15  government – it is the only one whose operations are conducted almost wholly within

16  federal jurisdiction, and are subject to little or no regulation by States of local

17  authorities.'" 508 F.3d at 473, *quoting* S.REP. NO. 1811, 85th Cong., 2d Sess. 5

18  (1958). The *Montalvo* court also noted that "Congress' intent to displace state law

19  is implicit in the pervasiveness of the federal regulations, the dominance of the

20  federal interest in this area, and the legislative goal of establishing a single, uniform

21  system of control over air safety." *Id.*

22      22.    Specifically, the Ninth Circuit concluded in *Montalvo* that "the

23  regulations enacted by the Federal Aviation Administration, read in conjunction with

24  the [Federal Aviation Act] itself, sufficiently demonstrate an intent to occupy

25  exclusively the entire field of aviation safety and carry out Congress' intent to

26  preempt all state law in this field." 508 F.3d at 471.  The court also determined that

27  "Congress intended to have a single, uniform system for regulating aviation safety."

28  *Id.*  This "single, uniform system" exists and regulates federally, at the national level.

23.    In *Gilstrap*, the Ninth Circuit examined field preemption and conflict preemption. As to field preemption, "we ask whether the particular field of aviation commerce and safety implicated by the lawsuit is governed by 'persuasive federal regulation.'" *Gilstrap, supra,* 709 F.3d at 1006. Even if state remedies are not field-preempted, they may still be barred if they would create an "'actual conflict'" between state and federal law. *Id.* at 1008.

24.    The federal judiciary recognition of the unitary, national nature of aviation predates the Federal Aviation Act itself. Indeed, Justice Jackson noted that "[p]lanes do not wander about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands." *Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 303 (1944) (J. Jackson, concurring).

25.    The Federal Aviation Act also provides that "the Secretary of Transportation has the duty to promote the safety of flight of civil aircraft by establishing minimum standards for aircraft design, materials, workmanship, construction and performance." Additionally, "[t]he Secretary has the discretion to prescribe reasonable rules and regulations governing the inspection of aircraft, including the manner in which such inspections should be made." *Waymire v. United States*, 629 F.Supp. 1396, 1398 (D. Kan. 1986).

26.    The Federal Aviation Act also requires that "[b]efore an aircraft may be placed into service, its owner must obtain from the FAA an airworthiness certificate, which denotes that the aircraft is in a safe condition for operation." *Id.*

27.    The Ninth Circuit has recognized that "[t]he safety of pilots and others aboard aircraft, as well as persons on the ground, depends upon the airworthiness certification program under the Act." *Arney v. United States*, 479 F.2d 653, 658 (9th Cir. 1973).

28.    Pursuant to the Federal Aviation Act, "the FAA has implemented a comprehensive set of rules and regulations, including a multi-step certification

process, delineating the minimum safety standards with which aircraft designers and manufacturers must comply." *Holbrook v. United States*, 749 F.Supp.2d 446, 448 (S.D. W. Va. 2010).

29.   Congress intended the determination of airworthiness to be an exclusive federal function because "Congress empowered the Secretary [of Transportation] to implement a system for enforcing compliance with minimum safety standards according to the Secretary's best judgment." Consequently, "[t]he FAA's inspections for airworthiness clearly arise out of its regulatory conduct." *Waymire v. United States, supra,* 629 F.Supp. at 1402.

30.   Compliance with FAA standards is a prerequisite for the issuance of an airworthiness certificate, as "[t]he applicant for an airworthiness certificate has the duty to insure that his aircraft conforms to the FAA safety regulations." *Waymire v. United States, supra,* 629 F.Supp. at 1400.   The FAA is responsible for "policing compliance with the safety regulations." *Id.* at 1401.

31.   The FAA issued Order 8130.2D in 1999, "setting forth specific guidelines regarding the procedures for issuing airworthiness certificates." *Holbrook v. United States, supra,* 749 F.Supp.2d at 448.

32.   "FAA Order 8130.2d, Chapter 2, defines the duties imposed upon an FAA inspector whose [*sic*] examining an experimental aircraft for purposes of certification." *Bollinger v. United States*, 2006 U.S. Dist. LEXIS 84308, at *14 (E.D. Wash. 2006).   FAA Order 8130.2d has been replaced by FAA Order 8130.2g.

33.   FAA Order 8130.2G Chg 1, Airworthiness Certification of Aircraft and Related Products, July 2, 2012 (hereinafter "FAA Order 8130.2g") identifies "two conditions necessary for issuance of an airworthiness certificate". First, "[t]he aircraft must conform to its type design."   Second, "[t]he aircraft must be in a condition for safe operation.   This refers to the condition of the aircraft relative to wear and deterioration, for example, skin corrosion, window delamination/crazing, fluid leaks, and tire wear." FAA Order 8130.2g, ¶ 200k p. 2-1.

34.    Federal oversight continues after an aircraft has been certified as airworthy. "After granting an airworthiness certificate, the FAA . . . retains broad powers to reinspect the aircraft at any time. Moreover, the FAA may issue an order amending, modifying, suspending, or revoking a previously issued airworthiness certificate." *Holbrook v. United States, supra,* 749 F.Supp.2d at 449 (citations omitted).

35.    Additional requirements apply "before an FAA safety inspector may issue an airworthiness certificate for an aircraft manufactured abroad and imported to the United States. . . ." Specifically, "the inspector must first receive a certificate demonstrating that the government of the export country has inspected the aircraft and found it in compliance with the aircraft's type certificate." *Ibid.,* 749 F.Supp.2d at 449.

36.    The product at issue in this case is an Aero Vodochody L-39C Experimental Exhibition Jet aircraft, Serial Number 132127, bearing FAA registration number N39WT (hereinafter "the aircraft")  The aircraft was designed as a military jet trainer aircraft and was manufactured in the former Czechoslovakia.

37.    N39WT is one of several hundred former L-39 aircraft that have been demilitarized and imported into the United States. FAA Order 8130.2G, Section 600(a) specifies the two types of acceptable documentation that must accompany a foreign-manufactured aircraft "when being imported to the United States for FAA airworthiness acceptance. . . ." (FAA Order 8130.2g, ¶ 600, p. 6-1.)

38.    "The primary basis for airworthiness certification of used imported aircraft is 14 C.F.R. section 21.183(d). (FAA Order 8130.2g, ¶ 600(e)(1), p. 6-1.)

39.    Pursuant to 14 C.F.R. section 21.183(d), "An applicant for a standard airworthiness certificate for a used aircraft or surplus aircraft of the U.S. Armed Forces is entitled to a standard airworthiness certificate if: (1) The applicant presents evidence to the FAA that the aircraft conforms to a type design approved under a type certificate or a supplemental type certificate and to applicable Airworthiness

Directives; (2) The aircraft (except an experimentally certificated aircraft that previously had been issued a different airworthiness certificate under this section) has been inspected in accordance with the performance rules or 100-hour inspections set forth in section 43.15 of this chapter, or an equivalent performance standard acceptable to the FAA, and found airworthy by– (i) the manufacturer; (ii) The holder of a repair station certificate as provided in Part 145 of this chapter; (iii) The holder of a mechanic certificate as authorized in Part 65 of this chapter; or (iv) The holder of a certificate issued under part 121 of this chapter; and having a maintenance and inspection organization appropriate to the aircraft type; and (3) The FAA finds after inspection, that the aircraft conforms to the type design, and is in condition for safe operation."

40.   FAA Order 8130.2g, Section 603, sets forth the airworthiness certification requirements for imported aircraft. These requirements include: issuance of U.S. aircraft registration; an acceptable aircraft identification plate; compliance with noise limitations; appropriate English-language manuals and markings; logbooks; and maintenance records. (FAA Order 8130.2g, ¶ 603(a)-(e), pp. 6-2, 6-3.)

41.   "Former military aircraft should be demilitarized prior to application for airworthiness certification." (FAA Order 8130.2g, ¶4073.) "[B]ecause the demilitarization process most likely will involve a change to the aircraft configuration, FAA representatives should not consider an application for airworthiness certification unless demilitarization has been complete." *Id.*

42.   The preemption that applies in the field of aviation safety has been interpreted by courts to specifically include pilot qualifications. See, e.g. *Ventress v. Japan Airlines*, 828 F.Supp.2d 1166, 1173, 1176 (D. Hawaii 2011) (determination whether airman was medically qualified to be a flight engineer "would intrude in the area of airmen medical standards, which Congress intended to occupy exclusively"); *French v. Pan Am Express, Inc.,* 869 F.2d 1, 5 (1 st Cir. 1989). In *French*, with respect to a state law drug testing statute, the court held that "the intricate web of

1    [FAA] statutory provisions affords no room for the imposition of state-law criteria

2    vis-a-vis pilot suitability[,]" concluding "without serious question, that preemption

3    is implied by the comprehensive legal scheme which imposes on the Secretary of

4    Transportation the duty of qualifying pilots for air service." *Id.* at 5.

5    43.   A pilot who wants to fly the L-39 must obtain an authorized

6    experimental authorization ("AEA") rating before he or she can act as PIC of the L-

7    39.  The requirements on how to obtain AEA for the L-39 are set forth in FAA Order

8    8900.1, Volume 5 ("Airmen Certification"), Chapter 9 ("Other Airmen

9    Authorizations"), Section 2 ("Issue a Letter of Authorization for [PIC] of Surplus

10   Military Turbine- or Piston-Powered Airplanes").  In order to be eligible for an AEA

11   for the L-39, which is considered by the FAA as a surplus military turbojet-powered

12   aircraft, a pilot must meet the following requirements:

13        a.    Possess at least a U.S. private pilot certificate with an appropriate

14              category and class rating (e.g., airplane, single-engine land);

15        b.    Hold an instrument rating;

16        c.    Possess at least a valid U.S. third-class medical certificate;

17        d.    Have logged a minimum of 500 hours of pilot flight time in the aircraft

18              category and have completed the U.S. armed services qualification

19              checkout described in subparagraph 5-1582A1) of this section; or

20        e.    Have logged a minimum of 1,000 hours pilot flight time, including 500

21              hours as PIC in the aircraft category, and have completed one of the

22              training requirements of subparagraph 5-1582B.

23   (*See* FAA Order 8900.1, § 5-1580A.)

## IV.   CONCLUSION

25   The FARs and associated Orders include extensive regulation in the areas of

26   piloting and pilot qualifications in general (see 14 C.F.R. Parts 91), with specific

27   requirements for an authorization to pilot an L-39..  The complaint is based in large

28   part upon allegations concerning improperly licensed and qualified pilots and

carrying passengers or property for hire in violation of Federal Aviation Regulation 91.319.   These allegations come squarely within the comprehensive regulatory scheme of the Federal Aviation Regulations dealing with pilot licensing, qualifications and alleged revocations.   In addition, the licensing of the L-39, especially as a foreign jet fighter aircraft, is exclusively controlled by the Federal Aviation Regulations.  The pervasive federal regulations at issue in this litigation support removal based on federal question.


DATED: July 28, 2014                    MICHAELIS, MONTANARI & JOHNSON


                                     By:   /s/ Garry L. Montanari
                                           GARRY L. MONTANARI
                                           Attorneys for Defendants,
                                           WALTER WOLTOSZ and SIMULATIONS
                                           PLUS, INC.

N:\14512\pld\p-fed.notice.removal.1.wpd

EXHIBIT "A"

1 | THOMAS V. GIRARDI – SBN: 36603
2 | KEITH D. GRIFFIN – SBN: 204388
  | GIRARDI | KEESE
3 | 1126 Wilshire Boulevard
  | Los Angeles, California 90017
4 | Tel: (213) 977-0211
  | Fax: (213) 481-1554
5 |
6 | JAMES D. STUBBS – SBN: 83016
  | 671 Indian Ridge Dr.
7 | Palm Desert, CA 92211
  | Tel: 760-722-5242
8 | Fax: 760-722-4925
9 | Attorneys For Plaintiff

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 14 2014

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| SHERRI WINSLOW | CASE NO. BC545789 |
| Plaintiff, | WRONGFUL DEATH COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL |
| vs. | |
| INCREDIBLE ADVENTURES, INC.; WALTER WOLTOSZ, an individual; SIMULATIONS PLUS, INC.; MACH 1 AVIATION, INC.; ESTATE OF DOUG GILLIS, DECEASED; AVIATION CLASSICS, LTD.; and DOES 1 through 100, inclusive, | 1. NEGLIGENCE 2. NEGLIGENCE (COMMON CARRIER) 3. NEGLIGENCE (HIRING) 4. NEGLIGENCE (OWNERSHIP) 5. NEGLIGENCE (MAINTENANCE) 6. NEGLIGENCE (PRODUCT LIABILITY) 7. STRICT PRODUCTS LIABILITY 8. FRAUD AND DECEIT |
| Defendants. | |

## NATURE OF ACTION

Plaintiff brings this lawsuit for the injury to and wrongful death of Richard Winslow pursuant to California Code of Civil Procedure §377.60, et seq. or any other law the Court deems to apply. In addition, Plaintiff Sherri Winslow, as successor-in-interest, hereby asserts a survivor claim on behalf of Richard Winslow, pursuant to California Code of Civil Procedure § 377.10, 377.20 and 377.30 et seq., and succeeds to causes of action that might have been brought by the

1
COMPLAINT

1  decedent. Plaintiff will execute and file a declaration under penalty of perjury required by

2  California Code of Civil Procedure § 377.32

3

4  ## BACKGROUND

5     1.     On May 18, 2012, Mr. Richard Winslow was riding as a passenger in an L-39 jet

6  when it crashed upon take off in Boulder City, Nevada. Both he and the pilot of the aircraft, Mr.

7  David Gillis, were killed. Mr. Winslow was one of eight people who were participating in a jet

8  ride as a birthday excursion for his friend, Mr. Richard Young.  Mr. Young's wife had purchased

9  the jet flight excursion through a company called Incredible Adventures, Inc.:

10    2.     Unbeknownst to any of the participants, Incredible Adventures, Inc. was operating

11  an illegal ride for hire excursion service with unqualified and unfit pilots, who had prior histories

12  of misconduct. The Defendants, and each of them, engaged in a fraudulent scheme to characterize

13  the ride for hire as a "film production", attempting to take advantage of a loophole in the FAA

14  regulations.

15    3.     On the date of the incident, the two pilots took the civilians on jet rides one at a

16  time. The third flight with Doug Gillis and Mr. Winslow crashed upon take off, killing them both.

17

18  ## THE PARTIES

19    4.     SHERRI WINSLOW, the plaintiff herein, is the surviving spouse of the decedent,

20  Mr. Richard Winslow and is a resident of California.

21    5.     Defendant MACH 1 AVIATION, INC.. is a corporation that maintains aviation

22  facilities and deals with foreign and domestic air travel. Its principal place of business is in Los

23  Angeles, California.

24    6.   · Defendant INCREDIBLE ADVENTURES, INC. is a Florida corporation which

25  does substantial business in the State of California. Defendant INCREDIBLE ADVENTURES,

26  INC. has substantial contacts with the State of California, including but not limited to, providing

27  excursion events for California residents, including decedent Richard Winslow. In addition, . . . . .

28  Incredible Adventures, Inc. offers and provides excursion events that take place in Los Angeles,

2
COMPLAINT

1  California.

2      7.    Defendant WALTER WOLTOSZ is the owner of the above mentioned aircraft

3  involved in this incident. Mr. Woltosz is a resident of the State of California.

4      8.    Defendant SIMULATIONS PLUS, INC.. is the owner of the above mentioned

5  aircraft involved in this incident.  Defendant SIMULATIONS PLUS, INC. is a California

6  corporation doing substantial business in the State of California.

7      9.    Defendant ESTATE OF DOUG GILLIS, DECEASED, is sued and named herein

8  pursuant to California Probate Code §§ 550-554, inclusive.  Upon information and belief,

9  decedent DOUG GILLIS was a resident of Solana Beach, California, prior to his death.

10     10.   Defendant AVIATION CLASSICS, LTD. is a Nevada business entity doing and

11 conducting substantial business in the State of California, including but not limited to, servicing

12 aircraft, including the subject aircraft, which was owned and hangered in Los Angeles, California.

13     11.   The true names and/or capacities, whether individual, corporate, associate, or

14 otherwise of Defendants DOES 1-100, inclusive, are unknown to Plaintiff who therefore sues the

15 Defendants by such fictitious names pursuant to California Code of Civil Procedure §474. Plaintiff

16 further alleges that each of the fictitious Defendants is in some manner responsible for the acts and

17 occurrences hereinafter set forth. Plaintiff will amend this Complaint to show their true names and

18 capacities when the same are ascertained, as well as the manner in which each fictitious Defendant

19 is responsible.

20     12.   At all times relevant to this action, Defendants MACH 1 AVIATION,

21 INCREDIBLE ADVENTURES, INC. and DOES 1 through 100 employed the services of David

22 Riggs and Doug Gillis to be pilots for organized jet flight excursions.

23     13.   At all times relevant to this action, pilots David Riggs and Doug Gillis were acting

24 within the course and scope of their employment for Defendants Mach 1 Aviation, Inc., Incredible

25 Adventurers, Inc. and DOES 1 through 100.

26     14.   Plaintiff is informed and believe, and thereon allege, that at all times

27 herein mentioned each of the Defendant DOES 1-100, inclusive, were the agents, servants,

28 employees, officers, directors, managing agents and/or joint venturers of each of the remaining

1   Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of

2   their agency, service, employment, management and/or joint venture.

3

4   <u>GENERAL ALLEGATIONS</u>

5       15.    In or about January – May 2012, Sandy Young decided to hire Incredible

6   Adventures, Inc., an event service company, to host a birthday party excursion for her husband,

7   Rick Young.

8       16.    The event was scheduled to take place in Las Vegas, Nevada on or about May 18,

9   2012. In exchange for approximately $29,000, Incredible Adventures, Inc. offered to provide, and

10  did provide, a Top Gun dog fighting experience for Mr. Young and 7 of his friends. The 8

11  participants were to be briefed and instructed on Top Gun fighter jet dog fighting and then taken

12  up on mock aerial missions in Soviet-era jet fighters.

13      17.    On May 18, 2012 the flight participants arrived at Boulder city airport where they

14  then watched pilots David Riggs and Doug Gillis fly into the airport.

15      18.    Mr. Riggs told the passengers immediately prior to flight that in order to be

16  partaking in the activity the participants needed to be considered making a movie, using his hands

17  to make quotations when stating "making a movie".

18      19.    Gillis and Riggs then began taking the participants on flights in the fighter jets.

19  The first two flights were unremarkable. Mr. Winslow was a passenger in the third flight in the

20  fighter jet piloted by Doug Gillis. Michael Smith was the passenger in the third flight in the

21  fighter jet piloted by David Riggs. The two jets took off in tandem down the runway. Shortly

22  after takeoff, the jet piloted by Gillis veered to the right. Pilot Gillis was heard making a 'may

23  day' call over the radio. The jet then crashed into the desert. Both occupants were killed.

24      20.    Pilot Doug Gillis had his pilot license revoked by the FAA in 2009 after falsifying

25  documents that lead to a tragic crash causing the death of two people.

26      21.    Pilot David Riggs had his pilot license revoked by the FAA in 2010 when he was

27  convicted of recklessly operating an aircraft after flying a jet directly over Santa Monica Pier

28  endangering and frightening many patrons.

4
COMPLAINT

1    22.    Despite David Riggs' and Doug Gillis' past altercations with the FAA, Mach 1

2    Aviation, Inc. and Incredible Adventures, Inc. hired David Riggs and Doug Gillis to fly the jets for

3    their advertised "Top Gun" flying experience.

4    23.    Doug Gillis and David Riggs did not mention their past flying experience or

5    altercations with the FAA to any passengers prior to the incident.

6

7    ### FIRST CAUSE OF ACTION

8    ### NEGLIGENCE

9    (As to Defendants INCREDIBLE ADVENTURES, INC., MACH 1 AVIATION, INC.,

10    ESTATE OF GILLIS, DECEASED and DOES 1 through 100)

11    24.    The allegations contained in paragraphs 1-23 of the complaint are incorporated by

12    reference as if fully set forth herein.

13    25.    At all times mentioned herein, pilots David Gillis and David Riggs were acting

14    within the scope of their respective employment for Incredible Adventures, Inc., Mach 1 Aviation,

15    Inc. and DOES 1 through 100.

16    26.    Defendants, and each of them, and DOES 1 through 100, were negligent in at least

17    the following respects:

18         a.    Failing to provide proper pre-flight safety training, instructions or

19    procedures to participants.

20         b.    Failing to provide proper disclosures with experience or flying history to

21    any of the participants.

22         c.    Failing to be properly licensed to fly for compensation or hire.

23         d.    Failing to properly and prudently navigate and pilot the subject aircraft;

24         e.    Failing to use reasonable skill and due care required by pilots in the same or

25    similar circumstances.

26         f.    Operating an illegal ride for hire excursion service in violation of FAA rules

27    and regulations.

28    27.    Upon information and belief, pilots David Riggs and Doug Gillis were not licensed

1  to perform flights for hire and violated the rules and regulations of the FAA. Both pilots failed to

2  use standard operating procedures required by the FAA and failed to inform the passengers of

3  their flying history which indicated a high degree of danger.

4       28.    Defendant's conduct amounts to negligence per se as violations of 14 CFR 91.319

5  and other Federal Aviation Regulations relating to the operation of experimental and military

6  aircraft.

7       29.    The conduct of Defendants was willful, wanton and malicious and constituted a

8  conscious and intentional disregard of and indifference to the safety of the passengers on the

9  subject flight, including Richard Winslow. Such conduct for profit was grossly negligent and

10  reckless, thereby entitling plaintiff to recover punitive damages from defendants, and each of

11  them, pursuant to California Civil Code § 3294.

12       30.    As a direct and proximate result of the negligent acts and omissions of Defendants,

13  and each of them, the subject aircraft crashed, causing the death of Richard Winslow. Prior to his

14  death, Mr. Winslow endured extreme suffering and mental and physical anguish, pain and

15  personal injury; including but not limited to, pre-crash fright, as a direct and proximate result of

16  Defendants' negligence.

17       31.    As a further direct and proximate result of the negligent acts and omissions of

18  Defendants, and each of them, Plaintiff has been deprived of the Decedent's love, affection, solace,

19  companionship, love, protection, moral guidance, consortium, services, care, counsel, guidance

20  and training, advice and moral support, as well as monetary contributions and financial support;

21  funeral and burial expenses, property damage, and other damages, and as permitted by law.

22

23                          SECOND CAUSE OF ACTION

24                          NEGLIGENCE (COMMON CARRIER)

25              (As to DEFENDANTS INCREDIBLE ADVENTURES, INC.,

26                  MACH 1 AVIATION, INC., and DOES 1 through 100)

27       32.    The allegations contained in paragraphs 1-31 of the complaint are incorporated by

28  reference as if fully set forth herein.

33. At all times mentioned herein, Defendants, and each of them, and DOES 1 through 100 were considered common carriers within the meaning of California Civil Code section(s) 2168 and 2085.

34. Defendants, and each of them, and DOES 1 through 100, owed Richard Winslow and the other excursion participants the highest duty of care and vigilance to protect them from danger.

35. Defendants, and each of them, and DOES 1 through 100, owed Richard Winslow and the other excursion participants a duty to do all that human care, vigilance, and foresight can reasonably do under the circumstances to avoid harm to the participants.

36. Defendants, and each of them, and DOES 1 through 100, had a duty to use the highest degree of care in servicing, inspecting and maintaining the subject aircraft.

37. Defendants, and each of them, and DOES 1 through 100, failed to use the highest duty of care in at least the following respects:

a. Failing to provide proper pre-flight safety training, instructions or procedures to participants.

b. Failing to provide proper disclosures with experience or flying history to any of the participants.

c. Failing to be properly licensed to fly for compensation or hire.

d. Failing to properly and prudently navigate and pilot the subject aircraft;

e. Failing to use reasonable skill and due care required by pilots in the same or similar circumstances.

f. Operating an illegal ride for hire excursion service in violation of FAA rules and regulations.

g. Failing to properly service, inspect and maintain the subject aircraft.

h. Failing to properly investigate the qualifications and piloting histories of David Riggs and Doug Gillis.

i. Entrusting the operation of the subject aircraft to unqualified and reckless

1  pilots with histories of FAA violations and licensure revocations.

2      38.    The conduct of Defendants was willful, wanton and malicious and constituted a

3  conscious and intentional disregard of and indifference to the safety of the passengers on the

4  subject flight, including Richard Winslow. Such conduct for profit was grossly negligent and

5  reckless, thereby entitling plaintiff to recover punitive damages from defendants, and each of

6  them, pursuant to California Civil Code § 3294.

7      39.    As a direct and proximate result of the negligent acts and omissions of Defendants,

8  and each of them, the subject aircraft crashed, causing the death of Richard Winslow. Prior to his

9  death, Mr. Winslow endured extreme suffering and mental and physical anguish, pain and

10  personal injury, including but not limited to, pre-crash fright, as a direct and proximate result of

11  Defendants' negligence.

12      40.    As a further direct and proximate result of the negligent acts and omissions of

13  Defendants, and each of them, Plaintiff has been deprived of the Decedent's love, affection, solace,

14  companionship, love, protection, moral guidance, consortium, services, care, counsel, guidance

15  and training, advice and moral support, as well as monetary contributions and financial support;

16  funeral and burial expenses, property damage, and other damages, and as permitted by law.

17

18  **THIRD CAUSE OF ACTION**

19  **NEGLIGENCE (HIRING)**

20  (As to Defendants INCREDIBLE ADVENTURES, INC.,

21  MACH 1 AVIATION, INC. and DOES 1 through 100)

22      41.    The allegations contained in paragraphs 1-40 of the complaint are incorporated by

23  reference as if fully set forth herein.

24      42.    At all times mentioned herein, pilots David Gillis and David Riggs were acting

25  within the scope of their respective employment for Defendants INCREDIBLE ADVENTURES,

26  INC., MACH 1 AVIATION, INC. and DOES 1 through 100.

27      43.    Defendants, and each of them, and DOES 1 through 100, were negligent in hiring,

28  associating with and/or joint venturing with pilots David Riggs and Doug Gillis in at least the

8
COMPLAINT

following respects:

a.      Defendants, and each of them, and DOES 1 through 100, knew or in the exercise of reasonable diligence should have known that pilots Riggs and Gillis were unqualified and unfit for the operation of aircraft and transportation of excursion participants. Both Gillis and Riggs had previously been cited by the FAA for violations of FAA rules and regulations and both had previously had their pilot's licenses revoked for such violations.

b.      Defendants, and each of them, and DOES 1 through 100, knew or in the exercise of reasonable diligence should have known that pilots Riggs and Gillis had previously displayed conduct that was considered reckless and a danger to the public.

44.      Upon information and belief, Pilots David Riggs and Doug Gillis were not licensed to perform flights for hire and violated the rules and regulations of the FAA. Both pilots failed to use standard operating procedures required by the FAA and failed to inform the passengers of their flying history which indicated a high degree of danger.

45.      The conduct of Defendants was willful, wanton and malicious and constituted a conscious and intentional disregard of and indifference to the safety of the passengers on the subject flight, including Richard Winslow. Such conduct for profit was grossly negligent and reckless, thereby entitling plaintiff to recover punitive damages from defendants, and each of them, pursuant to California Civil Code § 3294.

46.      As a direct and proximate result of the negligent acts and omissions of Defendants, and each of them, the subject aircraft crashed, causing the death of Richard Winslow. Prior to his death, Mr. Winslow endured extreme suffering and mental and physical anguish, pain and personal injury, including but not limited to, pre-crash fright, as a direct and proximate result of Defendants' negligence.

47.      As a further direct and proximate result of the negligent acts and omissions of Defendants, and each of them, Plaintiff has been deprived of the Decedent's love, affection, solace, companionship, love, protection, moral guidance, consortium, services, care, counsel, guidance and training, advice and moral support, as well as monetary contributions and financial support; funeral and burial expenses, property damage, and other damages, and as permitted by law.

9
COMPLAINT

**FOURTH CAUSE OF ACTION**

NEGLIGENCE (OWNERSHIP)

(As to Defendants WALTER WOLTOSZ, SIMULATIONS PLUS, INC.

DOES 1 through 100)

48.     The allegations contained in paragraphs 1-47 of the complaint are incorporated by reference as if fully set forth herein.

49.     At all times mentioned herein, Defendants WALTER WOLTOSZ, SIMULATIONS PLUS, INC. and DOES 1 through 100, owned the subject L-39 aircraft involved in the fatal flight.

50.     Defendants, and each of them, owed a duty of care to ensure that the subject aircraft was operated in a safe and prudent manner as proscribed by both common law and the FAA aviation regulations.

51.     Defendants, and each of them, and DOES 1 through 100, were negligent in failing to safely, reasonably and prudently own the subject aircraft by entrusting, loaning, contracting, joint-venturing and/or otherwise permitting pilots Riggs and Gillis to operate the subject aircraft in an illegal ride-for-hire service, thereby endangering the public, the excursion participants and decedent Richard Winslow.

a.     Defendants, and each of them, and DOES 1 through 100, knew or in the exercise of reasonable diligence should have known that pilots Riggs and Gillis were unqualified and unfit for the operation of aircraft and transportation of excursion participants.  Both Gillis and Riggs had previously been cited by the FAA for violations of FAA rules and regulations and both had previously had their pilot's licenses revoked for such violations.

b.     Defendants, and each of them, and DOES 1 through 100, knew or in the exercise of reasonable diligence should have known that pilots Riggs and Gillis had previously displayed conduct that was considered reckless and a danger to the public.

52.     Defendants, and each of them, and DOES 1 through 100, knew or in the exercise of reasonable diligence should have known that the ride-for-hire excursion service was illegal and a danger to the public, the excursion participants and decedent Richard Winslow.

53. The conduct of Defendants was willful, wanton and malicious and constituted a conscious and intentional disregard of and indifference to the safety of the passengers on the subject flight, including Richard Winslow. Such conduct for profit was grossly negligent and reckless, thereby entitling plaintiff to recover punitive damages from defendants, and each of them, pursuant to California Civil Code § 3294.

54. As a direct and proximate result of the negligent acts and omissions of Defendants, and each of them, the subject aircraft crashed, causing the death of Richard Winslow. Prior to his death, Mr. Winslow endured extreme suffering and mental and physical anguish, pain and personal injury, including but not limited to, pre-crash fright, as a direct and proximate result of Defendants' negligence.

55. As a further direct and proximate result of the negligent acts and omissions of Defendants, and each of them, Plaintiff has been deprived of the Decedent's love, affection, solace, companionship, love, protection, moral guidance, consortium, services, care, counsel, guidance and training, advice and moral support, as well as monetary contributions and financial support; funeral and burial expenses, property damage, and other damages, and as permitted by law.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE (MAINTENANCE)

(As to MACH 1 AVIATION, INC., WALTER WOLTOSZ,

SIMULATOR PLUS, INC., AVIATION CLASSICS, LTD. and DOES 1 through 100)

56. The allegations contained in paragraphs 1-55 of the complaint are incorporated by reference as if fully set forth herein.

57. Defendants, and each of them, owed a duty of care to ensure that the subject aircraft was adequately and properly maintained, serviced and repaired as proscribed by both common law and the FAA aviation regulations.

58. Defendants, and each of them, and DOES 1 through 100, were negligent in failing to adequately maintain, service and repair the subject aircraft.

59. The conduct of Defendants was willful, wanton and malicious and constituted a

1   conscious and intentional disregard of and indifference to the safety of the passengers on the

2   subject flight, including Richard Winslow. Such conduct for profit was grossly negligent and

3   reckless, thereby entitling plaintiff to recover punitive damages from defendants, and each of

4   them, pursuant to California Civil Code § 3294.

5       60.    As a direct and proximate result of the negligent acts and omissions of Defendants,

6   and each of them, the subject aircraft crashed, causing the death of Richard Winslow. Prior to his

7   death, Mr. Winslow endured extreme suffering and mental and physical anguish, pain and

8   personal injury, including but not limited to, pre-crash fright, as a direct and proximate result of

9   Defendants' negligence.

10      61.    As a further direct and proximate result of the negligent acts and omissions of

11  Defendants, and each of them, Plaintiff has been deprived of the Decedent's love, affection, solace,

12  companionship, love, protection, moral guidance, consortium, services, care, counsel, guidance

13  and training, advice and moral support, as well as monetary contributions and financial support,

14  funeral and burial expenses, property damage, and other damages, and as permitted by law.

15

16              <u>SIXTH CAUSE OF ACTION</u>

17              NEGLIGENCE (PRODUCT LIABILITY)

18                (As to DOES 1 through 100)

19      62.    The allegations contained in paragraphs 1-61 of the complaint are incorporated by

20  reference as if fully set forth herein.

21      63.    At all times mentioned herein, DOES 1 through 100, designed, manufactured,

22  distributed, sold and/or installed components of the subject aircraft.

23      64.    Defendants, and each of them, owed a duty of care to ensure that the subject

24  aircraft components were reasonably and prudently designed, manufactured, distributed, sold

25  and/or installed.

26      65.    Defendants, and each of them, and DOES 1 through 100, were negligent in failing

27  to reasonably and prudently design, manufacture, distribute, sell and/or install the subject aircraft

28  components.

66.    As a direct and proximate result of Defendants' negligence, the subject aircraft crashed upon takeoff at the aforementioned time and location, killing Richard Winslow.

67.    The conduct of Defendants was willful, wanton and malicious and constituted a conscious and intentional disregard of and indifference to the safety of the passengers on the subject flight, including Richard Winslow. Such conduct for profit was grossly negligent and reckless, thereby entitling plaintiff to recover punitive damages from defendants, and each of them, pursuant to California Civil Code § 3294.

68.    As a direct and proximate result of the negligent acts and omissions of Defendants, and each of them, the subject aircraft crashed, causing the death of Richard Winslow.  Prior to his death, Mr. Winslow endured extreme suffering and mental and physical anguish, pain and personal injury, including but not limited to, pre-crash fright, as a direct and proximate result of Defendants' negligence.

69.    As a further direct and proximate result of the negligent acts and omissions of Defendants, and each of them, Plaintiff has been deprived of the Decedent's love, affection, solace, companionship, love, protection, moral guidance, consortium, services, care, counsel, guidance and training, advice and moral support, as well as monetary contributions and financial support; funeral and burial expenses, property damage, and other damages, and as permitted by law.

## SEVENTH CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY

#### (As to DOES 1 through 100)

70.    The allegations contained in paragraphs 1-69 of the complaint are incorporated by reference as if fully set forth herein.

71.    At all times mentioned herein, DOES 1 through 100, designed, manufactured, distributed and/or sold components of the subject aircraft.

72.    At all times mentioned herein, the subject aircraft components were defective.

73.    As a direct and proximate result of said defect(s), the subject aircraft crashed upon takeoff at the aforementioned time and location, killing Richard Winslow.

74.   The conduct of Defendants was willful, wanton and malicious and constituted a conscious and intentional disregard of and indifference to the safety of the passengers on the subject flight, including Richard Winslow. Such conduct for profit was grossly negligent and reckless, thereby entitling plaintiff to recover punitive damages from defendants, and each of them, pursuant to <u>California Civil Code</u> § 3294.

75.   As a direct and proximate result of the negligent acts and omissions of Defendants, and each of them, the subject aircraft crashed, causing the death of Richard Winslow.  Prior to his death, Mr. Winslow endured extreme suffering and mental and physical anguish, pain and personal injury, including but not limited to, pre-crash fright, as a direct and proximate result of Defendants' negligence.

76.   As a further direct and proximate result of the negligent acts and omissions of Defendants, and each of them, Plaintiff has been deprived of the Decedent's love, affection, solace, companionship, love, protection, moral guidance, consortium, services, care, counsel, guidance and training, advice and moral support, as well as monetary contributions and financial support; funeral and burial expenses, property damage, and other damages, and as permitted by law.

<u>EIGHTH CAUSE OF ACTION</u>

FRAUD AND DECEIT

(As to Defendants INCREDIBLE ADVENTURES, INC.,

MACH 1 AVIATION, INC. and DOES 1 through 100)

77.   The allegations contained in paragraphs 1-76 of the complaint are incorporated by reference as if fully set forth herein.

78.   Defendants, and each of them, entered into an illegal and fraudulent scheme for compensation which resulted in the death of Richard Winslow.

a.   Defendant INCREDIBLE ADVENTURES, INC. fraudulently misrepresented to the public, the excursion participants and decedent Richard Winslow that the subject Top Gun excursion was a legal and safe activity.

///

14
COMPLAINT

      b.     Defendants misrepresented that they were qualified and properly accredited to facilitate the involved activities including jet flights in specified locations.

      c.     Defendants fraudulently represented that they were offering a plane flight for a fun adventurous "Top Gun" experience when in fact they were illegally flying for compensation.

      d.     Defendants fraudulently misrepresented that the jet flights were safe and that the aircraft being used were reliable. Further Defendants' misrepresented that their pilots were qualified and legally able to be performing these specific flights.

      e.     Defendant INCREDIBLE ADVENTURES, INC. received approximately $29,000 as a result of the fraudulent scheme as compensation for the Top Gun excursion.

79.    Defendants' fraudulent misrepresentations were intended to induce and did induce the decedent Richard Winslow to participate in the Top Gun excursion which ultimately lead to his death.

80.    Defendants knew that the Top Gun excursion was a dangerous and illegal activity, yet hid these facts from the public, the participants and decedent Richard Winslow.

81.    Defendants, and each of them, and DOES 1 through 100, conspired with one another in furtherance of the fraudulent ride-for-hire scheme.

82.    As a direct result of Defendants intentional misrepresentation of material facts, decedent Richard Winslow took a plane flight he believed to be safe, and the subject aircraft crashed, causing his death.

83.    The conduct of Defendants was willful, wanton and malicious and constituted a conscious and intentional disregard of and indifference to the safety of the passengers on the subject flight, including Richard Winslow. Such conduct for profit was grossly negligent and reckless, thereby entitling plaintiff to recover punitive damages from defendants, and each of them, pursuant to California Civil Code § 3294.

84.    As a direct and proximate result of the negligent acts and omissions of Defendants, and each of them, the subject aircraft crashed, causing the death of Richard Winslow.  Prior to his death, Mr. Winslow endured extreme suffering and mental and physical anguish, pain and

1 | personal injury, including but not limited to, pre-crash fright, as a direct and proximate result of

2 | Defendants' negligence.

3 |      85.    As a further direct and proximate result of the negligent acts and omissions of

4 | Defendants, and each of them, Plaintiff has been deprived of the Decedent's love, affection, solace,

5 | companionship, love, protection, moral guidance, consortium, services, care, counsel, guidance

6 | and training, advice and moral support, as well as monetary contributions and financial support;

7 | funeral and burial expenses, property damage, and other damages, and as permitted by law.

8 |

9 | <u>**PRAYER FOR RELIEF**</u>

10 |     WHEREFORE, Plaintiff prays judgment against Defendants and each of them as

11 | hereinafter set forth;

12 |     1.    Pain and suffering, mental anguish, psychological and emotional distress and for

13 | pre-impact fear of death;

14 |     2.    Loss of care, comfort, love, society, solace, moral support, companionship,

15 | guidance, and services of the Decedents to the survivors, beneficiaries and heirs and the resulting

16 | grief and sorrow;

17 |     3.    Loss of support and services in money or in kind;

18 |     4..    Loss of net accumulations;

19 |     5.    Loss or earnings and earning capacity;

20 |     6.    Loss of inheritance;

21 |     7.    Funeral and burial expenses;

22 |     8.    Full-value of life of the Decedent for wrongful death

23 |     9.    Punitive damages;

24 |     10.    Prejudgment interest;

25 |     11.    Costs of suit; and

26 | ///

27 | ///

28 | ///

1       12.  Any other damages to which Plaintiff and/or beneficiaries may be entitled under all

2   applicable laws.

3   DATED:    May 13, 2014            GIRARDI | KEESE

4

5                                                By:

6                                             THOMAS V. GIRARDI

7                                             KEITH D. GRIFFIN
                                          Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED:      May 13, 2014

GIRARDI | KEESE

By: _____
THOMAS V. GIRARDI
KEITH D. GRIFFIN
Attorneys for Plaintiff

18
COMPLAINT

NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTO | OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp

THOMAS V. GIRARDI, SBN 36603
KEITH D. GRIFFIN, SBN 204388
GIRARDI | KEESE
1126 WILSHIRE BLVD.
LOS ANGELES, CA 90017
213-977-0211
ATTORNEY FOR (Name): PLAINTIFF

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

**MAY 16 2014**

John A. Clarke, Executive Officer/Clerk
By GLORIETTA ROBINSON, Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
111 N. HILL STREET
LOS ANGELES, CA 90012

PLAINTIFF: SHERRI WINSLOW

DEFENDANT: INCREDIBLE ADVENTURES, INC.; WALTER WOLTOSZ, an individual, et al.

| AMENDMENT TO COMPLAINT | CASE NUMBER: |
| (Fictitious / Incorrect Name) | BC545789   DEPT-92 |

[X] **FICTITIOUS NAME** *(No order required)*

Upon the filing of the complaint, the plaintiff, being ignorant of the true name of the defendant and having designated the defendant in the complaint by the fictitious name of:

FICTITIOUS NAME
DOE 1

and having discovered the true name of the defendant to be:

TRUE NAME
Estate of DAVID GLEN RIGGS

amends the complaint by substituting the true name for the fictitious name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE OF ATTORNEY |
| May 16, 2014 | KEITH D. GRIFFIN | |

[ ] **INCORRECT NAME** *(Order required)*

The plaintiff, having designated a defendant in the complaint by the incorrect name of:

INCORRECT NAME

and having discovered the true name of the defendant to be:

TRUE NAME

amends the complaint by substituting the true name for the incorrect name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE OF ATTORNEY |
| | | |

**ORDER**

THE COURT ORDERS the amendment approved and filed.

Dated _____

Judicial Officer _____

LACIV 105 (Rev. 01/07)
LASC Approved 03-04

**AMENDMENT TO COMPLAINT**
(Fictitious / Incorrect Name)

Code Civ. Proc., §§ 471.5,
472, 473, 474
LA-15

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL PERSONAL INJURY CASE**
Case Number _____

<u>THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT</u>

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Gregory Keosian | 91 | 635 | | | |
| Hon. Elia Weinbach | 92 | 633 | | | |
| Hon. Samantha P. Jessner | 93 | 631 | | | |
| Hon. Teresa Beaudet | 97 | 630 | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _MAY 14 2014_     SHERRI R. CARTER, Executive Officer/Clerk

By _____, Deputy Clerk

LACIV PI 190 (Rev09/13)
LASC Approved 05-06
For Optical Use

**NOTICE OF CASE ASSIGNMENT –**
**UNLIMITED CIVIL CASE**

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>THOMAS V. GIRARDI, SBN 36603<br>KEITH D. GRIFFIN, SBN 204388<br>GIRARDI \| KEESE<br>1126 WILSHIRE BLVD.<br>LOS ANGELES, CA  90017<br>TELEPHONE NO.: 213-977-0211   FAX NO.: 213-481-1554<br>ATTORNEY FOR *(Name):* PLAINTIFF | **FOR COURT USE ONLY**<br>CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br>MAY 14 2014<br>Sherri R. Carter, Executive Officer/Clerk<br>By Shaunya Bolden, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. HILL STREET
MAILING ADDRESS:
CITY AND ZIP CODE: LOS ANGELES, CA  90012
BRANCH NAME: CENTRAL

| CASE NAME: WINSLOW v. INCREDIBLE ADVENTURES, INC., et al. | |
|---|---|
| **CIVIL CASE COVER SHEET**<br>[X] Unlimited   [ ] Limited<br>(Amount    (Amount<br>demanded   demanded is<br>exceeds $25,000)   $25,000 or less) | **Complex Case Designation**<br>[ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) |
| | CASE NUMBER: BC 545789 |
| | JUDGE: |
| | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [X] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

**2.** This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve      in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

**3.** Remedies sought *(check all that apply):* a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive

**4.** Number of causes of action *(specify):* 8

**5.** This case [ ] is [X] is not a class action suit.

**6.** If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: MAY 13, 2014

KEITH D. GRIFFIN
(TYPE OR PRINT NAME)          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|

Legal Solutions Plus

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

To Plaintiffs and Others Filing First Papers. If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

To Parties in Rule 3,740 Collections Cases. A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

To Parties in Complex Cases. In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice—Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case—Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief from Late Claim
   Other Civil Petition

| SHORT TITLE: WINSLOW v. INCREDIBLE ADVENTURES, INC., et al. | CASE NUMBER | BC 5 4 5 7 8 9 |
|---|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES   CLASS ACTION? [ ] YES   LIMITED CASE? [ ] YES   TIME ESTIMATED FOR TRIAL 10 [ ] HOURS/ [X] DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps -- If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column A, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column B below which best describes the nature of this case.

**Step 3:** In Column C, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> **Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | [ ] A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | [ ] A6070 Asbestos Property Damage | 2. |
| | | [ ] A7221 Asbestos – Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [X] A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | [ ] A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | [ ] A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | [ ] A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | [ ] A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | [ ] A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.0
Page 1 of 4

LA-CV109

| SHORT TITLE: WINSLOW v. INCREDIBLE ADVENTURES, INC., et al. | CASE NUMBER |
|---|---|

| | | A (check one box) B | C Applicable Reasons-see Step 3 |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels _____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

SHORT TITLE: WINSLOW v. INCREDIBLE ADVENTURES, INC., et al.    CASE NUMBER

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

| SHORT TITLE: WINSLOW v. INCREDIBLE ADVENTURES, INC., et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. | ADDRESS: 7274 HAYVENHURST AVE., SUITE 247 |
|---|---|
| ☐1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☒8. ☐9. ☐10. | |

| CITY: VAN NUYS | STATE: CA | ZIP CODE: 91406 |
|---|---|---|

Item IV. Declaration of Assignment: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the STANLEY MOSK                    courthouse in the CENTRAL              District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: MAY 13, 2014

(SIGNATURE OF ATTORNEY/FILING PARTY)

KEITH D. GRIFFIN

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.0
Page 4 of 4